IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 12, 2005

## ASHLEY NESBITT v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-27737     J. C. McLin, Judge**

_____

**No. W2004-02360-CCA-R3-PC  - Filed October 11, 2005**

_____

A Shelby County jury convicted the petitioner of several crimes including first degree murder, attempted first degree murder, attempted first degree premeditated murder and aggravated robbery. On direct appeal, we reversed and dismissed the conviction for attempted first degree premeditated murder. The petitioner then filed a petition for post-conviction relief alleging several grounds. The post-conviction court denied his petition in a written order. We affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Juni S. Ganguli, Memphis, Tennessee, for the appellant, Ashley Nesbitt.

Paul G. Summers, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; William L. Gibbons, District Attorney General; and Stephanie Johnson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

        The facts were set out in the petitioner's direct appeal in State v. Ashley Nesbitt, No. W2001-01663-CCA-R3-CD, 2003 WL 21338955 (Tenn. Crim. App., at Jackson, May 2, 2003), perm. app. denied (Tenn. Nov. 3, 2003), in the following manner:


        On the night of April 11-12, 1995, murder victim Kenneth Allen was visiting Carl Turner at Turner's home, an apartment in Memphis, Tennessee.  Also at the apartment were Aaron Cobb, Dedrick Adams, Taurus Cooper, Demetrius Manning, and James Green.  The men were playing dice and dominoes in the living

room/kitchen area of the apartment. Carl Turner's wife, Barbara Turner, was asleep in one of the bedrooms.

According to Cobb, the men heard a knock at the front door, and the Defendant and Ben Mills walked in. Cobb knew the Defendant and Mills because they had gone to school together. The new arrivals inquired about drugs but were told that there weren't any. Cobb testified that Mills then got up from where he was sitting and walked to the front door as if to leave. He then spun around, "came up with a gun" and told the men to "Drop it off." Mills shot his gun once into the ceiling. The Defendant then raised his gun, stating "You all heard him." Some of the assembled men dropped their money on the floor. Cobb also dropped his watch on the floor. According to Cobb, the Defendant and Mills then "just started shooting." Cobb testified that he saw both the Defendant and Mills firing their guns and described the guns as revolvers. He testified that those were the only guns he saw and stated that he heard about twelve gunshots. After the shooting began, Cobb fled through the back door of the apartment. Outside, he saw a gray car and an armed driver. Cobb testified that, earlier that day, he had seen Mills in that car.

After the shooting stopped, Cobb returned to the apartment and found Allen, who had been shot but was still alive. He and others helped Allen to the driveway to make it easier for the ambulance to pick him up. Allen subsequently died from a single gunshot wound which penetrated his lung.

Demetrius Manning arrived at Turner's apartment with Cobb. He recognized the Defendant and Mills when they entered the apartment. The Defendant sat down next to him on the couch and Mills sat on the other couch. Mills and the Defendant made inquiries about drugs. When told there weren't any, the robbery commenced. Mills shot once in the air. Manning testified that the Defendant "had the gun on [him] then." When Mills shot in the air, Manning ran down the hall. Subsequently, he heard "a whole lot of shots going off." He ran into a bedroom and prepared to jump out a window but then realized that the shooting had stopped. He returned to the living room and found Allen lying on the floor, shot. He then saw the Defendant coming back into the apartment through the back door with his gun. Manning testified that the Defendant started shooting, and he ran to the bedroom and jumped out the window.

Taurus Cooper testified that he was at Carl Turner's apartment on the night in question. He and some of his friends were there playing dominoes and shooting dice. At about two o'clock in the morning, the Defendant and Mills came in. Both men sat down. After a few minutes, Mills got up and went toward the front door. As he neared the door, he "spinned around with a gun and shot in the ceiling saying, 'You all drop the money off.'" Cooper dropped his money on the floor, and so did Cobb. By this time, the Defendant had also drawn his gun. Cooper testified that

both guns were revolvers. Cooper stated, "After we dropped the money on the floor, probably a second or two-five or six seconds later, they went to shooting-started shooting." He testified that both guns were being fired. Cobb ran out the back door, and Cooper hid behind the back door. When the shooting stopped, he and Adams left the apartment; everyone else except Allen had already left. Allen was lying on the floor, shot.

Carl Turner testified that the Defendant and Mills entered the apartment and inquired about drugs while he and his visitors were playing dice and dominoes. When told there weren't any drugs available, Mills walked toward the front door, "made a quick turn and said, 'Everybody put your hands up. Drop it off.'" Mills pulled a pistol, and Turner noticed that the Defendant also had a gun in his hand. When Mills fired the first shot, Turner ran to a bedroom, jumped out a window and ran. Turner testified that the only guns he saw in his apartment that night were the ones fired by the Defendant and Mills.

Barbara Turner testified that she was asleep on the night in question. She stated that she didn't hear anything until her husband came in and woke her up, telling her to get in the closet. After she was awake, she heard gunshots. Her husband jumped out the bedroom window, and she got in the closet. After the gunfire ceased, she left the closet and headed toward the bathroom. On her way, she looked into the living room and saw a man lying on the floor in a pool of blood. Another man was standing over him, picking up money. She retreated into the bathroom and closed the door. She waited a few minutes and then left the apartment. Officer Robert G. Moore was on his way to the crime scene when he saw a car matching the description broadcast by the dispatcher in response to the initial call to the police about the shooting. He followed the car until it stopped. At that point, the driver got out and started walking away. Officer Moore told him to stop and lay down and told the other two people remaining in the car to stay inside. A few seconds later, other officers arrived and took the driver and the occupants of the car into custody. Officer Moore continued to the crime scene. There, he found eleven bullet impacts in Carl Turner's apartment, five on the refrigerator. He testified that it appeared that bullets had been fired from each end of the apartment. He found no guns at the scene, and none of the weapons fired at the scene was ever recovered.

Officer Renwick Cowans assisted in taking the suspects into custody. He identified the Defendant at trial as the person who had been lying on the ground at Officer Moore's direction. He testified that Officer Moore pulled the suspects over about fifteen minutes after the original dispatch and that the suspects were about two blocks from the crime scene when they were pulled over. He recovered money from the Defendant's pocket.

The Defendant was indicted for the first degree murder of Allen, on alternative counts of premeditated murder and felony murder. He was also indicted for the attempted first degree premeditated murders of Cobb and Turner and for the aggravated robbery of Cobb. The jury convicted the Defendant on all of these counts, and the trial court merged the two murder convictions into one conviction for first degree murder.

Ashley Nesbitt, 2003 WL 21338955, at *1-3. Following his conviction, the petitioner appealed to this Court. We affirmed the petitioner's conviction for the first degree murder of Allen, the attempted first degree murder of Cobb, and the conviction for aggravated robbery. However, we reversed and dismissed the conviction for the attempted first degree premeditated murder of Turner. Id. at *4-5. We remanded for the trial court to modify the judgments to reflect that the premeditated murder and felony murder are merged into one conviction. Id. at *5.

The petitioner filed a pro se petition for post-conviction relief. The post-conviction court appointed counsel on November 25, 2003. Post-conviction counsel filed an amended petition on March 4, 2004. The post-conviction court held hearings on May 28 and June 3 of 2004. The post-conviction court denied the petition by order dated September 10, 2004. The petitioner filed a timely notice of appeal on September 22, 2004.

**Evidence at the Post-Conviction Hearing**

The petitioner, his trial counsel and his appellate counsel testified at the post-conviction hearings that were held over two (2) days. He stated that his trial counsel visited him in prison six (6) or seven (7) times. The petitioner told his trial counsel that he had an alibi for the night of the incident. He asked his trial counsel to base his defense on his alibi. The petitioner stated that one (1) of his complaints about his trial counsel was that counsel did not interview his potential alibi witnesses, even though the petitioner admitted that these witnesses could not provide him with an alibi for that night. The petitioner also admitted in his testimony at the post-conviction hearing that he did actually go to the house and became involved in a "gun battle." The petitioner also complained that his trial counsel did not interview the prosecution's witnesses.

Petitioner's trial counsel testified that he had twenty-eight (28) years' experience in the practice of law. He had represented defendants in more than twelve (12) homicide cases. The petitioner's trial counsel stated that all the discovery was conducted by the petitioner's original counsel and was given to the petitioner. Previous counsel also hired an investigator. Petitioner's trial counsel testified that he reviewed the materials created by the investigator. Trial counsel stated that the investigator spoke with all the witnesses he himself would have spoken to in any investigation prior to trial. Petitioner's counsel found out from reviewing the investigator's materials that the petitioner's alibi witnesses could not actually testify to the petitioner's whereabouts at the time the crime was committed. They then chose to go with a mistaken identity defense because there were four (4) men at the house where the incident occurred. One (1) of the men was the victim and

-4-

another died in a car accident before trial. Therefore, there were only two (2) men available to testify at the trial. The petitioner's trial counsel also reviewed the notes prepared by the counsel for the petitioner's co-defendant, Ben Mills. The petitioner's trial counsel testified that before he took over the case two (2) or three (3) months before trial, the petitioner's previous counsel had filed sixty-five (65) pre-trial motions. Petitioner's trial counsel did not file any additional motions because he believed the previous counsel had done an excellent job. Trial counsel also testified that he visited the petitioner many, many times in preparation for trial. Trial counsel stated that he did research before the trial and there was absolutely no media coverage in the case. He did not consider filing a motion for change of venue because there was such a lack of media coverage. Trial counsel also testified that Pshon Swift had originally given a description that did not help or harm the petitioner, so trial counsel did not call the witness. Petitioner's trial counsel also stated that he and the defendant discussed much of the evidence prior to trial. The photograph referred to by the petitioner is a photo of the victim when he was in high school. Trial counsel did not believe this photo was inflammatory, so he did not object to it. Trial counsel was also able to have several of the indictments dismissed with regard to the petitioner because the petitioner was indicted on several different theories for the results of one (1) discrete incident.

Petitioner's appellate counsel also testified at the post-conviction hearing. He stated that he spoke with the petitioner at least twenty (20) times while preparing the petitioner's direct appeal. Petitioner's appellate counsel stated that many of the issues the petitioner wanted to present on direct appeal were actually accusations of ineffective assistance of counsel. Appellate counsel did not include these accusations in the direct appeal because he did not want to take a "shotgun approach" and he felt that including those would "muddy the waters" with regard to his sufficiency of the evidence issue. Appellate counsel stated that he felt his appeal was successful because one (1) of the defendant's convictions was overturned on appeal.

## ANALYSIS

The petitioner argues that he was afforded ineffective assistance of counsel during both the trial and appellate phase. He specifically argues that his attorneys failed to properly investigate witnesses and research all available issues at both the trial and appellate levels. For these reasons, the petitioner argues that he should be granted post-conviction relief.

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1998). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issue raised, we will afford those findings of fact the weight of a jury verdict, and this court is bound by the court's findings unless the evidence in the record preponderates against those findings. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-

conviction court.  See State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001).  All questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578-79.  However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness.  See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

The petitioner argues in his brief that he was afforded ineffective assistance of counsel at both the trial and appellate levels.  However, the petitioner did not include any argument with regard to ineffective assistance of his appellate counsel in either his original petition for post-conviction relief or his amended petition for post-conviction relief.  The post-conviction court ruled solely on the issue of ineffective assistance of trial counsel in its order.  An appeal as of right is available from a trial court's order denying a petition for post-conviction relief.  Tenn. R. App. P. 3(b).  Because the petitioner did not raise the issue of ineffective assistance of appellate counsel in his petition and the trial court did not rule on this issue, we cannot now address whether the petitioner was indeed afforded ineffective assistance of counsel on appeal.

We now turn to the question as to whether the petitioner was afforded ineffective assistance of counsel at trial.  On appeal, the petitioner argues that his trial counsel was ineffective because he failed to employ an investigator and failed to adequately prepare for the trial.  The trial court made extensive findings with regard to the petitioner's allegation in the post-conviction court.   The trial court made the following findings of fact and conclusions of law with regard to the petitioner's assertions on appeal:

> **2. Failure to secure all discoverable materials from the District Attorney General's Office in a timely manner.  Counsel further failed to forward copies of discovery materials to Petitioner.  Due to this failure, Mr. Nesbitt was unaware of the possible evidence against him and was unable to assist in his defense.**
>      The Petitioner alleges that Trial Counsel did not secure all of the discovery materials that he was entitled to in a timely manner from the District Attorney's office and when he did receive the information he did not fully discuss this material with that Petitioner.  At the hearing for Post-Conviction relief, Trial Counsel was asked if he was provided with open file discovery from the state.  He responded that he was given information that he was probably not supposed to have access to prior to the trial such as Jencks material.  Trial Counsel stated that he took full advantage of the open file and he left no stone unturned.  He went on to testify that he fully discussed this information with the Petitioner and the Petitioner fully understood what was happening.  In fact, the record revealed that the Trial Counsel and the Petitioner had an in depth discussion about a photo and diagram of the crime scene that allegedly showed more bullet holes than the Defendants' guns could have fired. This conversation is proof that the Trial Counsel obtained the discovery from the

State and fully discussed it with the Petitioner in an effort to form a viable defense. Therefore, this allegation is without merit and shall be disregarded by this Court.

**3. Failure to fully and adequately conduct a pre-trial investigation, including interviewing potential prosecution witnesses.  A more thorough investigation would have revealed that Petitioner had a viable alibi defense to these charges.**

The Petitioner alleges that the Trial Counsel did not adequately conduct a pre-trial investigation, including interviewing witnesses that could have provided an alibi for the Petitioner.  Trial Counsel admitted at the hearing that he did not employ a private investigator to work on Mr. Nesbitt's case.  Trial Counsel stated that he had taken over the case from a Public Defender and that the previous attorney had used a private investigator but his work product was complete and there was no need to do more investigation.  The case was three or four years old and there was no need to attempt to investigate more since the previous investigator had performed a complete, thorough investigation when the witnesses and evidence were still fresh.

As to the allegation of Counsel not investigating the Petitioner's alibi witnesses, the Trial Counsel testified that Petitioner's proposed witness would not have been able to provide an alibi.  Trial Counsel did not call the proposed alibi witness because he could not say with certainty that the gunman was not the Petitioner.  Not withstanding [sic] the fact that later in the trial the Petitioner admitted to being at the scene of the crime.  This defeats the purpose for calling an alibi witness.  Therefore, this allegation is without merit and will be disregarded.

**4. Failure to properly advise and consult Petitioner as to the results of pre-trial investigation.  Had petitioner been advised of the results of this investigation he would have assisted in the process and been able to provide names of witnesses who would have upheld Petitioner's theory of an alibi defense.**

The Petitioner alleges that Trial Counsel did not consult with him as to the results of the pre-trial investigation, he was thus not able to give the attorney the names of the alibi witnesses that would have been able to corroborate his version of the story.  Trial Counsel testified that after he acquired the discovery from the State he discussed the evidence fully with the Petitioner whereby they discussed in detail one of the diagrams of the crime scene and devised a theory that there had to be more than two weapons being fired to cause all of the bullet holes at the scene.

As discussed previously, the alibi witness that Petitioner wanted to testify was not in position to identify the shooter.  Also later at the trial, the Petitioner admitted to being present at the scene of the crime.  Therefore calling an alibi witness was committing perjury, therefore this allegation is without merit and will be disregarded by this Court.

. . . .

-7-

**8. Failure to effectively cross-examine prosecution witnesses. Pre-trial investigation of these witnesses would have revealed that these individuals were not in position to identify the perpetrators of the crime.**

Witnesses Demetrius Manning and Taurus Cooper identified the Petitioner as one of the Gunmen. They did not know him personally but they identified the Petitioner in court as the gunman. The petitioner is alleging that the witnesses that identified him at trial were not in a position at the time of the shooting to be able to identify him. It was discovered at trial that the other potential witnesses to the shooting such as Barbara Turner and Pshon Swift were not actually present when the shooting took place. Barbara Turner was asleep at the time of the shooting and only saw a profile view of the gunman when he was picking up the money. Thus she could not positively identify the gunman. Pshon Swift was not even at the scene of the crime. He was at his grandmother's house, which was around the corner from the house where the shooting took place. It is hard to dispute the witnesses that identified the Petitioner as the gunman when later in the trial the Petitioner admits to being at the scene of the crime and actually participated in the shooting. Thus, any attempt to impeach the witness would have been futile because the Petitioner testified on the stand that he participated in the shooting. Therefore this allegation is without merit and shall be disregarded.

**9. Failure to investigate possible witnesses, such as Pshon Swift. Petitioner alleges that had Mr. Swift been investigated by trial counsel, he would have provided exculpatory testimony at trial.**

The Petitioner alleges that the Trial Counsel did not investigate possible witnesses such as Pshon Swift. Yet, Trial Counsel testified that Mr. Swift had been investigated and that he did not feel that there would be any benefit for the Petitioner in calling Mr. Swift to testify. Mr. Swift was not at the scene when the shooting occurred rather he appeared in the latter part of the incident. Trial Counsel said that there was no benefit in calling Mr. Swift to testify because he could not provide the Petitioner with an alibi or say he wasn't there. He simply described a person he saw shooting. That description did not describe the Petitioner but it did not rule him out either, therefore this witness was not beneficial to the defense. This decision not to call this witness involved tactical decision-making. Tactical decision-making is generally viewed as a process under the sole discretion of counsel, and is thus not generally subject to appellate or post-conviction review. This allegation is without merit and will be disregarded by this Court.

. . . .

**11. Failure to discuss with petitioner the impact of the admission into evidence of co-defendant Ben Mills' statement. Counsel did not discuss with Petitioner the implications of Mr. Mills' statement on Petitioner's case.**

The Petitioner alleges that Trial Counsel did not explain to him the effect that Co-defendant's statement that was given to the police could have on him. However, Trial Counsel testified that he discussed all the ramifications that the co-defendant's testimony could have on Petitioner's trial. Trial Counsel stated that he informed Petitioner that the defense would be made more difficult to establish, in light of the nature of the statements given by the co-defendant to the police. Trial Counsel affirmed that he discussed the hazards of this defense with the Petitioner [sic]. This allegation is a moot point because the statements that the co-defendant gave to the police were never used as evidence at Petitioner's trial. Therefore, this allegation is without merit and should be disregarded by this Court.

**12. Failure to properly move for a severance from Mr. Mills' pre-trial. Petitioner was prejudiced tremendously when he was tried with Mr. Mills, who had given incriminating statements to law enforcement.**

The Petitioner alleges that Trial Counsel failed to move for a severance from the Co-defendant. Trial Counsel testified at the hearing that in fact he did move for a severance but that it was denied. Trial Counsel felt that this was a moot issue because the Co-defendant did not testify. In this case it is a moot point because the co-defendant did not testify and thus his statement he gave to the police was never entered into the record. Therefore this allegation is without merit and should be disregarded by the court.

**13. Failure to request that the court charge lesser-included offenses to First Degree Murder.**

The Petitioner alleges that Trial Counsel should have requested that the Court charge the jury with lesser-included offenses to First Degree Murder. When questioned regarding this matter, Trial Counsel testified that he recalled that the judge did in fact give instructions on some lesser-included offenses. Trial Counsel explained at the hearing that there were many indictments under many different theories and many possible results. Counsel further elaborated that the charges under which Petitioner was indicted involved one event. Counsel stated that he was successful in getting some of Petitioner's charges dismissed at the outset of the proceedings. Counsel then testified that there was no way any of the remaining charges could have been consolidated or reduced. In essence there was apparently only one indictment, but with multiple counts, which would have had negative impact on the Petitioner with the jurors upon being read the indictment. Trial Counsel was successful in having the premeditated murder charge dropped notwithstanding the fact that the jury had returned a guilty verdict. It is the opinion of this Court that Trial Counsel has proven that the jury was properly charged, therefore this allegation is without merit and should be disregarded by this court.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. See Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. See id. at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. Burns, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. See Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. See id. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. See Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The petitioner first argues that his trial counsel was ineffective because he did not employ an investigator to prepare for trial. Petitioner's trial counsel testified that he received all the investigation materials gathered by the petitioner's previous attorney. The petitioner's previous attorney had hired an investigator. Petitioner's trial counsel also stated at the post-conviction hearing that the investigator spoke with the same witnesses with whom he himself would have spoken. As stated above, when a petitioner alleges ineffective assistance of counsel he must prove that his trial counsel's services were both deficient and prejudicial. See Powers, 942 S.W.2d at 558.

In the case sub judice, we find that the petitioner's trial counsel's services were not deficient with respect to failing to hire a second investigator. When petitioner's trial counsel began his representation, three (3) or four (4) years had passed since the incident. In fact, only two (2) of the four (4) men in the house at the time of the incident were available to testify at the trial. The petitioner does not point to any specific evidence to be gained from secondary interviews conducted

by another investigator. He merely argues that his trial counsel should have secured additional statements from these witnesses. This is not sufficient to prove that had his trial counsel conducted additional interviews new, more reliable information would have been gleaned from these interviews conducted three (3) or four (4) years after the incident. As his trial counsel stated at the post-conviction hearing, the petitioner's previous counsel had hired an investigator who did a very thorough job. The investigator interviewed witnesses much closer to the time of the incident. For these reasons, the petitioner has not proven that his trial counsel's representation with regard to hiring an additional investigator was deficient.

The petitioner also argues that his trial counsel failed to adequately prepare for his trial. In addition to not hiring an additional investigator, the petitioner argues that his trial counsel did not conduct sufficient pre-trial litigation. He specifically argues that his trial counsel should have argued a motion to suppress and filed a motion to suppress a photo line-up identification by two (2) men present at the incident. Petitioner's trial counsel testified at the post-conviction hearing that he did indeed argue a motion to suppress which was denied by the trial court. Petitioner's trial counsel stated that petitioner's previous counsel had filed sixty-five (65) pre-trial motions.

We find that the petitioner has not met his burden of proving that his trial counsel's performance was both deficient and prejudicial. The petitioner's previous counsel filed sixty-five (65) motions which address all relevant pre-trial issues. The petitioner argues specifically that his trial counsel should have filed a motion to suppress. Trial counsel testified that he did argue a motion to suppress. The post-conviction court accredited the petitioner's trial counsel's testimony. Therefore, we cannot find that his representation was deficient in this regard. With regard to the suppression of the identification, the post-conviction court found in its order that the petitioner actually admitted at trial to being at the scene of the crime and participating in the shooting. Therefore, the petitioner has been unable to meet his burden with regard to prejudice.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the post-conviction court.

_____
JERRY L. SMITH, JUDGE

-11-